WILLIAM JAHN, Plaintiff-Appellee, *v.* THE CITY OF WOODSTOCK, Defendant-Appellant.

Second District    No. 80-691

Opinion filed August 17, 1981.

Michael T. Caldwell, of Caldwell, Berner and Caldwell, of Woodstock, for appellant.

James M. Boback, of Boback and Bianchi, of Crystal Lake, for appellee.

Mr. JUSTICE HOPF delivered the opinion of the court:

The defendant, City of Woodstock, appeals from an order entered by the McHenry County circuit court requiring it to pay one half of the medical and life insurance premiums for one of its employees. The plaintiff, William Jahn, had been receiving a disability pension of 50 percent of his salary and requested in this declaratory judgment action that the city be required to pay his insurance premiums as well. After a bench trial, the court entered judgment in favor of Jahn.

Jahn was a full time police officer from 1969 until he was unable to return to full duty in 1977 after undergoing a knee operation. The parties are in agreement that the injury did not occur in the line of duty. Prior to being placed on disability, the city had provided Jahn with health and life insurance coverage and paid the insurance carrier directly. This was done pursuant to the city's personnel rules. Since the time when Jahn was placed on the disability roles and began to draw his pension, the city has deducted approximately $88 per month from his check for health and life insurance premiums and paid those premiums directly to the insurance carrier for Jahn and his family.

Under the provisions of the Pension Code (Ill. Rev. Stat. 1979, ch. 108½, par. 3—114.2), Jahn is entitled to 50 percent of his salary during his disability. The city urges that Jahn should get that and that alone. Jahn urges that this statutory provision should be read so as to include 50 percent of his salary and 50 percent of his insurance costs, just as an active duty policeman would receive.

The trial court found that because Jahn was a full-time employee at the time he went on the disability list, his status at that time should be controlling. The court concluded that because Jahn was still subject to

recall in an emergency, without a claim for salary against the city (Ill. Rev. Stat. 1979, ch. 108½, par. 3—116), a provision of the city's personnel rules limiting insurance coverage to full time employees should not apply to Jahn. Consequently, the court found that Jahn, as an employee of the city, was entitled to receive payment of 50 percent of his insurance premiums. The trial court, interpreting and relying on cases submitted by Jahn, determined that the courts have repeatedly attempted to provide police-men on disability with as many benefits as possible. In its judgment order dated August 6, 1980, the court ordered the city to pay 50 percent of Jahn's insurance premiums, arriving at this amount on the basis of Jahn's pension being 50 percent of his former salary. The court ordered the city to pay Jahn $1,405.34, the amount it had withheld.

The parties to this appeal are not in agreement as to what the relevant issues should be. Jahn urges that a disabled policeman remains an employee of the police force and therefore the city must provide insur-ance, as it does for all its employees under its personnel rules. The specific rule relied upon by Jahn provides as follows:

> "The City shall provide a hospitlization [sic] plan to cover the employee, and if the employee so desires, his family members." Woodstock, Illinois, Personnel Rules, art. 4, §8.1 (1974).

On the other hand, the city urges on appeal that the result reached by the trial court is not supported by the Illinois Pension Code. This pro-vides, in pertinent part:

> "Any policeman who becomes disabled as a result of any cause other than the performance of an act of duty, and who is found to be physically or mentally disabled so as to render necessary his suspension or retirement from service in the police department, shall be granted a disability pension of 50% of the salary attached to his rank on the police force at the date of suspension of duty or retirement." Ill. Rev. Stat. 1979, ch. 108½, par. 3—114.2.

We are of the opinion that the pension code provision quoted above, more specifically addresses the issue that must be resolved in this case than does the provision relied upon by Jahn. The personnel rule relied upon by Jahn and the trial court was not intended to be given so expansive an interpretation that it would include disabled pensioners. Though the case of *McGann v. Harris* (1904), 114 Ill. App. 308, relied upon by Jahn does determine that a disabled police officer is still a member of the police force, there is nothing in that case to suggest that the employer must pay insurance premiums on behalf of a disabled officer.

■■ We are mindful that the purpose of laws for police and firemen's pensions is beneficial and such statutes should be liberally construed in favor of those to be benefited. *Board of Trustees v. Department of In-surance* (1976), 42 Ill. App. 3d 155, 356 N.E.2d 171.

The question posed is whether or not the word "salary" as used in section 3—114.2 should be read to include insurance premiums. This section does not define "salary," and there are no Illinois cases that have considered this specific question.

■■ It is fundamental in construing the legislative intent of a statute, that the court construe the statute in its entirety. (*Peifer v. Board of Trustees* (1976), 35 Ill. App. 3d 383, 342 N.E.2d 131.) A definition of the word "salary" is given in another provision of the pension code, in a section that concerns the financing of the fund. This section states:

> "* * * For the purposes of this section, the word 'salary' means the annual salary including longevity attached to the rank held by the policeman as established by the municipality's appropriation ordinance, but does not include 'overtime pay', 'holiday pay', 'bonus pay', 'merit pay', or any other cash benefit over and above the salary established by the appropriation ordinance;" Ill. Rev. Stat. 1979, ch. 108½, par. 3—125(2).

While this definition indicates that it is for the purpose of this "section" rather than the "act", we are of the opinion that it signifies a legislative intent of what scope "salary" was to have in section 3—114.2 as well.

This same section, section 3—125(2), provides the means by which a police pension is financed. It is financed in part by the deductions taken from active duty policemen's salaries. These deductions are a percentage of the "salary" as defined in the above-quoted provision. Because no provision for fringe benefits was provided in this section, that in itself is an indication that the legislature intended to exclude fringe benefits from the term "salary."

■■ We do not believe that the legislature intended that disabled pensioners receive the same fringe benefits as active duty policemen. We do not make the distinction between employer payment of insurance premiums and employer payment of other fringe benefits. We note that if "salary" is read to include insurance premiums, benefits other than insurance coverage, such as clothing allowance, mileage, and vacation pay, would possibly have to be granted disabled pensioners as well. The statute was not intended to have such a broad sweep. If the legislature had chosen language that was more inclusive, or had stated "salary, fringe benefits and other compensation," then we would reach a contrary result.

We note that the word "salary" has been defined in other contexts to mean a "fixed annual or periodical payment," (*Commonwealth Life & Accident Insurance Co. v. Board of Review* (1953), 414 Ill. 475, 485, 111 N.E.2d 345). The word is most often used to mean a fixed amount rather than a fringe benefit such as insurance premiums would be considered.

While no case in Illinois has decided this point, we are assisted by a number of cases from foreign jurisdictions which have addressed the specific issue raised by the parties before us.

In *Hilligoss v. LaDow* (Ind. App. 1977), 368 N.E.2d 1365, an Indiana statute with the same language as that in section 3—114.2 was examined to determine whether employer insurance programs and clothing allowance payments form a part of the "salary" of policemen or "monthly wage" of firemen for computing pension benefits. The court held that such benefits were not a part of a "salary" or "monthly wage" under the applicable pension provisions. The court found that the legislature intended a restricted meaning because it had not used more embracing terminology than it did.

A similar result was reached by the Supreme Court of Wisconsin in *State ex rel. City of Manitowoc v. Police Pension Board* (1973), 56 Wis. 2d 602, 203 N.W.2d 74. In this case the State appealed from a pension board determination that a retired police officer was entitled to a pension that included health and life insurance contributions by the employer. The statute provided for a pension equal to one half of the police officer's monthly compensation, which the court interpreted to exclude health and life insurance coverage. The court noted that the legislature could provide otherwise if they deemed it the better policy.

A similar result was reached in *State ex rel. Henderson v. Schuele* (1971), 25 Ohio St. 2d 179, 267 N.E.2d 590, where the statutory wording provided for "salary for the rank held" was deemed by the court to not include employer contributions of insurance premiums in the computation of police and fire pension benefits.

We deem the reasoning of our sister States to be most persuasive.

In sum, while a municipality may volunteer to provide otherwise, we are of the opinion the City of Woodstock cannot be compelled to provide payment of insurance premiums for William Jahn. To hold otherwise would be an expansion of the intended scope of the controlling language of the pension code. For these reasons, the judgment of the trial court of McHenry County is reversed and remanded for entry of an order consistent with this opinion.

Reversed and remanded.

REINHARD and UNVERZAGT, JJ., concur.