FIFTH DIVISION

June 27, 1997

No. 1-95-2491

NORMAN HOLLAND, CARLYLE JAKOVEC,   ) Appeal from the

SALVATORE TRICOCI, THOMAS KELLY,   ) Circuit Court of

and JAMES McDONOUGH, individually  ) Cook County.

and on behalf of all others     )

similarly situated and derivatively)

on behalf of the Policemen's     )

Annuity and Benefit Fund and the   )

Firemen's Annuity and Benefit Fund ) No. 90 CH 9756

of Chicago,     )

     )

Plaintiffs-Appellants,     )

v.     ) The Honorable

     ) Dorothy Kirie Kinnaird,

THE CITY OF CHICAGO, a municipal   ) Judge, Presiding.

corporation; RICHARD M. DALEY,     )

Mayor of the City of Chicago;      )

MIRIAM SANTOS, Treasurer of the    )

City of Chicago and Trustee of the )

Policemen's Annuity and Benefit    )

Fund and Firemen's Annuity and     )

Benefit Fund of Chicago; WALTER    )

KNORR, Comptroller of the City of  )

Chicago and Trustee of the         )

Policemen's Annuity and Benefit    )

Fund and Firemen's Annuity and     )

Benefit Fund of Chicago; WALTER    )

KOZUBOWSKI, former City Clerk of   )

the City of Chicago and Former     )

Trustee of the Firemen's Annuity   )

and Benefit Fund of Chicago;       )

ERNEST WISH, City Clerk and        )

Trustee of the Firemen's Annuity   )

and Benefit Fund; RUSSELL EWERT,   )

THOMAS ALLISON, CHESTER JASKOLA,   )

Former Trustees and CHARLES R.     )

LOFTUS, RONALD R. NORRIS, GARY B.  )

HELMS, ROBERT F. RUESCHE and       )

RICHARD J. JONES, Trustees of the  )

Policemen's Annuity and Benefit    )

Fund, and JAMES T. NOLAN, FRED     )

GAWRYK, JOSEPH F. QUINN, WILLIAM   )

J. WILKINSON and JAMES T. JOYCE,   )

Trustees of the Firemen's Annuity  )

and Benefit Fund of Chicago, and   )

DONALD STENSLAND, Former Trustee,  )

all as direct and/or derivative    )

defendants; and THE RETIREMENT     )

BOARD OF THE POLICEMEN'S ANNUITY   )

AND BENEFIT FUND and THE           )

RETIREMENT BOARD OF THE FIREMEN'S  )

ANNUITY AND BENEFIT FUND OF        )

CHICAGO as direct defendants only, )

     )

Defendants-Appellees.         )

JUSTICE HOURIHANE delivered the opinion of the court:

Plaintiffs, current or former members of the Chicago police and fire departments, who are or will be entitled to receive retirement benefits, brought an action against the City of Chicago (City), various city officials, the trustees of the Policemen's and Firemen's Annuity and Benefit Funds (hereafter Policemen's and Firemen's Pension Funds or the Funds), and the Retirement Boards of the Funds (hereafter pension boards or boards), seeking declaratory and injunctive relief and damages.  The gravamen of plaintiffs' complaint is that the City failed to report to the pension boards the full amount of "salary" paid to plaintiffs, contrary to the provisions of Articles 5 and 6 of the Illinois Pension Code (40 ILCS 5/1-101 
et seq.
 (West 1994 and Supp. 1995)), thereby decreasing plaintiffs' total vested pension benefits.  Plaintiffs also alleged that defendants' practice of excluding certain items of compensation from "salary" deprived plaintiffs of their due process rights in violation of federal civil rights law.  42 U.S.C. § 1983 (1988).  

The circuit court dismissed all of plaintiffs' claims with prejudice either on the pleadings, pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 1994)), or pursuant to the provisions of section 2-619 of the Code (735 ILCS 5/2-619 (West 1994).  Plaintiffs appeal.  155 Ill. 2d R. 301.  The principal issue on review is whether the circuit court properly construed the Pension Code to exclude certain items of compensation from "salary" for purposes of calculating pension contributions and benefits.  For the reasons that follow, we affirm the judgment of the circuit court.

ANALYSIS

As a preliminary matter, the Funds argue that judicial review of certain counts of the complaint is barred because plaintiffs ran afoul of the Administrative Review Law.  735 ILCS 5/3-101 
et seq.
 (West 1994).  We decline to entertain the Funds' argument as it finds no support in the record before this court.

As to the principal issue on appeal, plaintiff police officers contend that the following items of compensation, negotiated under one or more collective bargaining agreements, fall within the definition of "salary" as used in Article 5 of the Pension Code: duty availability allowance, uniform allowance, overtime pay, holiday pay, optional pay for personal days, pay for baby furlough days, final vacation pay, pay for work out of grade, and supplemental pay for sergeants, lieutenants and captains.  Plaintiffs also claim that a one-time lump sum payment of $1,250 made during 1989 pursuant to an arbitration award also constitutes "salary".

Plaintiff firefighters contend that the following items of compensation fall within the definition of "salary" under Article 6 of the Pension Code: shift reduction allowance, clothing allowance, overtime pay, holiday pay, final vacation pay, pay received for acting out of classification, pay received for attending recertification training seminars during off-duty hours, pay for unused administrative days, training instructor incentive pay, and a $1,250 one-time lump sum payment made during 1988.  All of these pay provisions arise under the firefighters' collective bargaining agreements.

The circuit court concluded that none of the disputed compensation items constitute "salary" for purposes of the Pension Code.  The court noted that there was no evidence that the legislature intended that the additional benefits firefighters and police officers receive under their labor contracts should be included in salary, and that "salary" means "the base salary in the budget line item as appropriated in the municipality's appropriation ordinance."  Plaintiffs argue that the language of the Pension Code, the Illinois Constitution, and caselaw construing the Pension Code require the opposite conclusion, and that pension rights cannot be decided based on how the City and the unions label a pay provision.  

We agree with defendants that the circuit court correctly construed the Pension Code.  The primary object of statutory construction is to give effect to the true intent of the legislature.  
Kraft, Inc. v. Edgar
, 138 Ill. 2d 178, 189, 561 N.E.2d 656 (1995). 
 Such inquiry necessarily begins with the language employed in the statute, as this is the best evidence of the legislature's intent.  
Kraft
, 138 Ill. 2d at 189. 
 Where a statute defines its own terms, those terms will be construed in accordance with the statutory definitions.  
Puss N Boots, Inc. v. Mayor's License Comm'n of the City of Chicago
, 232 Ill. App. 3d 984, 987, 597 N.E.2d 650 (1992).  Absent such definitions, the words used in a statute will be given their plain and ordinary meanings.  
Eagan v. Chicago Transit Authority
, 158 Ill. 2d 527, 531-32, 634 N.E.2d 1093 (1994).  In ascertaining the plain and ordinary meaning of words, courts have used the dictionary as a resource.  
People ex rel. Daley v. Datacom Systems Corp.
, 146 Ill. 2d 1, 15, 585 N.E.2d 51 (1992).  We turn first to the provisions of Article 5 of the Pension Code which governs policemen's annuity and benefit funds.

Policemen's Annuity and Benefit Fund 

Section 5-114 of the Pension Code defines a police officer's "salary" as follows:

"(a) Annual salary, provided that $2,600 shall be the maximum amount of salary to be considered for any purpose under this Act prior to July 1, 1927.

(b) Annual salary, provided that $3,000 shall be the maximum amount of salary to be considered for any purpose under this Act from July 1, 1927 to July 1, 1931.

(c) Annual salary, provided that the annual salary shall be considered for age and service annuity, minimum annuity and disability benefits and $3,000 shall be the maximum amount of salary to be considered for prior service annuity, widow's annuity, widow's prior service annuity and child's annuity from July 1, 1931 to July 1, 1933.

(d) 
Beginning July 1, 1933, annual salary of a policeman appropriated for members of his rank or grade in the city's annual budget or appropriation bill, subject to the following:

(1)
 For age and service annuity, minimum annuity and disability benefits, the amount of annual salary without limitation;

(2) 
For prior service annuity, widow's annuity, widow's prior service annuity and child's annuity
 from July 1, 1933 to July 1, 1957, the amount of annual salary up to a maximum of $3,000; 
beginning July 1, 1957, for such annuities the amount of annual salary without limitation
.

(3) When the salary appropriated is for a definite period of service of less than 12 months in any one year, disability benefits shall be computed on a daily wage basis computed by dividing the amount appropriated by 365.

(e) 
For a policeman assigned to a non-civil service position
 as provided in Section 5-174 from and after January 1, 1970, (with the hereinafter stated excess not considered as salary for any purpose of this Article for any of the years prior to 1970 except to the extent provided by the election in Section 5-174), 
annual salary means the total salary derived from appropriations applicable to the civil service rank plus the excess over such amount paid for service in the non-civil service position
."  (Emphasis added.) 40 ILCS 5/5-114 (West 1994).

Plaintiffs focus on the "without limitation" language in subsection (d)(1) and argue that the obvious meaning of this language is that the legislature intended that all compensation, in whatever form, be included in salary for pension purposes, as long as the funds were budgeted and appropriated by the City.   We disagree.  When interpreting a statute, it must be viewed as a whole.  
People v. Acevedo
, 275 Ill. App. 3d 420, 425, 656 N.E.2d 118 (1995).  Thus, a particular provision must not be read in isolation, but rather must be read in conjunction with all other relevant provisions.  
Cincinnati Insurance Co. v. Miller
, 190 Ill. App. 3d 240, 244, 546 N.E.2d 700 (1989); 
Acevedo
, 277 Ill. App. 3d at 425.  Plaintiffs' reading of subsection (d)(1) ignores the preceding subsections.

Subsections (a), (b), and (c), which define "salary" for various time periods prior to July 1, 1933, all set a dollar cap on the amount of salary that is to be considered for purposes of Article 5 of the Pension Code.  Subsection (d)(1), on the other hand, which covers the period beginning July 1, 1933, refers to "annual salary 
without limitation".   Plainly this language was not intended to enlarge the definition of salary, but rather is indicative only that, unlike prior periods, no dollar cap applies.  Similarly, the reference in subsection (d)(2) to "annual salary without limitation" is in contrast to the preceding portion of (d)(2) which refers to the annual salary, up to a certain maximum amount, when computing prior service annuity and widow's and child's annuity for different time periods.

Plaintiffs also focus on subsection (e), which provides that annual salary of officers in non-civil service positions shall be the "
total appropriations applicable to civil service rank plus the excess over such amount paid for service in the non-civil service position."  Plaintiffs contend that the legislature's inclusion of excess compensation derived from the non-civil service position provides conclusive evidence that the legislature intended police officers to receive credit for all appropriated compensation.  We cannot agree.  We read subsection (e) to mean only that police officers appointed to a non-civil service position will not be penalized by such appointment and thus receive credit for salary attributable to their civil service rank, and any excess paid by virtue of their non-civil service appointment.

Plaintiffs' strained interpretation of section 5-114 fails to take into account the unambiguous language found in subsection (d).  Subsection (d) plainly states that a police officer's "salary" is the "
annual salary of a policeman appropriated for members of his rank or grade in the city's annual budget or appropriation bill
".  While there is no question that the disputed items of compensation have been duly appropriated by the City as part of the police department's annual budget, plaintiffs cite to nothing in any of the City's appropriation ordinances which demonstrates that such items of compensation have been appropriated as "salary" by "rank or grade". 

We note that the appropriation ordinance for the City of Chicago, Department of Police, includes a section which lists each "position" within the police department, the number of each position, and the "rate", 
i.e.
, "salary", attached to the position.  There is no indication that such salary figures include any of the disputed items of compensation.  Rather, based on the record before this court, the rates appear to coincide with the "basic salary schedule" set forth in the collective bargaining agreement.  We also observe that, with one exception (that being the $1,250 lump sum payment), all of the disputed items of compensation arise by virtue of one or more negotiated labor contracts and that plaintiffs cite to no provision in such contracts indicating that these additional items are intended to be treated as "salary" for purposes of pension contributions.  As to the $1,250 payment, the arbitrator referred to it not as salary, but as a "signing bonus".

Irrespective of how the various components of a police officer's total compensation are treated in the City's annual appropriation ordinance or in the relevant labor contracts, we are not persuaded that the disputed items of compensation 
should otherwise be included in "annual salary" for purposes of computing pension contributions and benefits.  
Jahn v. Woodstock
, 99 Ill. App. 3d 206, 425 N.E.2d 490 (1981), on which the circuit court relied, provides some guidance.

In 
Jahn
, the court considered whether the term "salary", as used in 
Article 3 of the Pension Code (which governs police pension funds in municipalities of less than 500,000 inhabitants), should be read to include insurance premiums paid by a municipality on behalf of police officers.  The court looked to the definition of "salary" set out in section 3-125(2) which specifically excludes overtime pay, holiday pay, bonus pay, merit pay, or any other cash benefit over and above the salary established in the appropriation ordinance.  Ill. Rev. Stat. (1979) ch. 108½, par. 3-125(2)
 (now 40 ILCS 5/3-125.1).  The court also observed that "salary" generally means a fixed annual or periodical payment and thus does not typically include fringe benefits such as insurance premiums, clothing allowance, milage, and vacation pay.  
Jahn
, 99 Ill. App. 3d at 209.  The court reasoned that, had the legislature intended to include such items in "salary", it would have chosen more inclusive statutory language.  In the absence of such language, the court would not read the statute as including insurance premiums within "salary" under Article 3.

 Although here we are concerned with Article 5 of the Pension Code, we find the court's reasoning in the 
Jahn
 decision persuasive.  There is a complete absence in Article 5 of any language indicating an intent by the legislature to depart from the generally accepted definition of "salary", 
i.e.
, fixed compensation paid regularly for services (Webster's Third New International Dictionary 2003 (1993)), to include fringe benefits and other compensation.  A "fringe benefit" is generally defined as "an employment benefit (as a pension, a paid holiday, or health insurance) granted by an employer that involves a money cost without effecting basic wage rates."  Webster's Third New International Dictionary 912 (1993).  We believe the disputed items of compensation are appropriately categorized as fringe benefits as they are in addition to the regular wage.  Thus, in the absence of statutory language indicating otherwise, such benefits are not a component of "salary".  

Under plaintiffs' interpretation of the statute, the distinction between fringe benefits and salary is extinguished.  Had the legislature intended this result, then it surely would have used more sweeping language such as
 "salary, fringe benefits and other compensation".  See 
Jahn
, 99 Ill. App. 3d at 209.   Rather, the legislature used the more limiting term, "salary".  We will not presume that the legislature's choice of words was inadvertent.

Plaintiffs contend that such a narrow reading of the term "salary" violates the rule that pension statutes are to be liberally construed in favor of those to be benefited, and that any ambiguity in the definition of "salary" should be resolved in favor of including the disputed pay provisions.  Plaintiffs rely principally on 
Board of Trustees of the Policemen's Pension Fund of the Village of Oak Brook v. Department of Insurance
, 42 Ill. App. 3d 155, 356 N.E.2d 171 (1976) (hereafter 
Oak Brook
) and 
Board of Trustees of the Firemen's Pension Fund of the City of Park Ridge v. Department of Insurance
, 109 Ill. App. 3d 919, 441 N.E.2d 107 (1982) (hereafter 
Park Ridge
).  

We agree that the Pension Code should be liberally construed in favor of the City's police officers, one of the statute's intended group of beneficiaries.  
Oak Brook
, 42 Ill. App. 3d at 159.  This general rule, however, does not permit this court, under the guise of statutory construction, to substitute different provisions or otherwise depart from the plain meaning of the words employed.  
Buckellew v. Board of Education of Georgetown-Ridge Farm Community Unit School District No. 4
, 215 Ill. App. 3d 506, 511, 575 N.E.2d 556 (1991).  We find no ambiguity in the term "salary" as used in Article 5 and thus no basis on which to construe the statute in the fashion plaintiffs urge. 

A review of the 
Oak Brook
 and 
Park Ridge
 cases does not change the result.  In 
Oak Brook
, the court considered whether certain merit increases in pay should be included in "salary" for purposes of Articles 3 and 4 of the Pension Code (which govern police officers' and firefighters' pension funds in municipalities of less than 500,000 inhabitants, respectively), despite a statutory provision excluding merit pay or "any other cash benefit over and above the salary established by the appropriation ordinance."  Ill. Rev. Stat. (1973) ch. 108½, pars. 3-125(2) and 4-124 (now 40 ILCS 5/3-125.1 and 5/4-118.1, respectively).  Under the village's Merit Pay Plan, any merit increases were added to the employee's former salary and that total was appropriated by ordinance as the annual salary for the employee.  Thus, the court reasoned that the pay increase "merged" into and became the employee's salary for the next year.  Accordingly, it could not be said that the merit pay increases were "over and above" the appropriated salaries.  In the case 
sub judice
, plaintiffs fail to cite to any portion of the City's annual appropriation ordinance from which this court could conclude that the disputed items of compensation were added to an officer's basic salary and, in effect, merged into and became a part of the officer's salary for the coming year.  

Plaintiffs' reliance on 
Park Ridge
 is equally unavailing.  There the court considered whether a $700 payment to paramedics, paid on a quarterly basis and designated as a "bonus" should be considered part of "salary" for purposes of Article 4 of the Pension Code.  Article 4 specifically excluded from salary "bonus pay *** over and above the salary established by the appropriation ordinance".  Ill. Rev. Stat. (1979), ch. 108½, par. 4-124 (now 40 ILCS 5/4-118.1).  The additional $700 sum was payable to paramedics pursuant to contract on a 
pro rata
 basis upon the date they completed training and were authorized to assume full paramedic responsibilities.  The court reasoned that when a fireman is certified as a paramedic, his salary includes the $700 payment and merely labelling it a bonus did not change the legal character of the compensation.  The court considered the general definition of bonus as a payment "in addition" to regular wages, and concluded that the $700 payment was not in addition to, but was part of, regular wages because it did not abate until the paramedic assumed inactive status.  We do not believe that the particular items of compensation at issue here are sufficiently similar to the paramedic bonus in 
Park Ridge
 to warrant similar treatment.

Plaintiffs further argue that under 
Rock v. Burris
, 139 Ill. 2d 494, 564 N.E.2d 1240 (1990)
, if the purpose of the pay provision is to increase annual compensation, then it is "salary."  In 
Rock v. Burris
, 
our supreme court construed the term "salary" for purposes of Article IV, §11 of the Illinois constitution which prohibits members of the legislature from increasing their salary during the term for which they have been elected.  Ill. Const. 1970, art. IV, §11.  Plainly, 
Rock v. Burris
 involved issues totally distinct from those before this court and
 we find little guidance in case law construing the term "salary" under constitutional provisions not relevant here.

Finally, we reject plaintiffs' contention that the circuit court's construction of the Pension Code violates Article XIII, §5 of the Illinois constitution.  Article XIII provides, 
inter alia
, that membership in any municipal pension or retirement system "shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired."  Ill. Const. 1970, art. XIII, §5.  Plaintiffs argue that the City and police pension board have violated this constitutional provision by ignoring the clear intent and language of Article 5 and basing pension contributions and benefits on less than an officer's entire salary.  Plaintiffs' argument misses the mark.  There is no indication that the term "salary" as used in Article 5 was ever intended by the legislature to include fringe benefits and other forms of compensation other than an officer's basic salary.  Thus, there can be no claim that the City or pension board has somehow redefined a statutory term, thus diminishing an officer's benefits. 

Based on the foregoing, we find no error in the circuit court's construction of the term "salary" under Article 5 of the Pension Code as excluding the disputed items of compensation.  We turn now to the provisions of Article 6 of the Pension Code which governs the Firemen's Pension Fund.

Firemen's Annuity and Benefit Fund

Section 6-163 sets forth the basis on which annuities and pensions for firefighters will be computed:

"Annual salary for computing annuities and benefits--Amount of duty disability benefit limited.  For age and service annuity, the minimum annuities prescribed in Sections 6-123 and 6-128 and 
for disability benefits, salary as defined in Section 6-111 shall be the basis of computation
.  
For disability pension and duty disability benefit under this Article, it shall be assumed that the annual salary of a fireman is the amount set out and appropriated for the rank or grade held by him in the annual budget or appropriation of the city
 ***."  (Emphasis added.) 40 ILCS 5/6-163 (West 1994).

Section 6-111, in turn, provides the following definition of "salary":

"Subject to Section 6-211, the annual salary of a fireman, as follows:

(a) For age and service annuity, minimum annuity and disability benefits, 
the actual amount of the annual salary
;

(b) For prior service annuity, widow's annuity, widow's prior service annuity and child's annuity to and including August 31, 1957, the amount of the annual salary up to a maximum of $3,000;

(c) Except as otherwise provided in Section 6-141.1, for widow's annuity, beginning September 1, 1957, the amount of annual salary up to a maximum of $6,000."  (Emphasis added.) 40 ILCS 5/6-111 (West 1994).

Finally, section 6-211, entitled "Permanent and temporary positions", provides in relevant part as follows:

"No annuity, pension or other benefit shall be paid to a fireman or widow, under this Article, based upon any salary paid by virtue of a temporary appointment.  
All contributions, annuities and benefits shall be related to the salary which attached to the permanent position of the fireman
. ***

A fireman who holds a position at the will of the Fire Commissioner
 or other appointing authority, whether or not such position is an "exempt" position, 
shall be deemed to hold a temporary position, and such employee's contributions and benefits shall be based upon the employee's permanent career service salary
.  (Emphasis added.) 40 ILCS 5/6-211 (West 1994).

Plaintiffs again focus on only a portion of the relevant statutory language, arguing that the phrase, "the actual amount of salary", found in section 6-111(a), is evidence that the legislature did not intend to exclude from salary any of the disputed items of compensation.  The language employed in subsection (a) is in contrast to subsections (b) and (c) which provide, under other circumstances, that the annual salary shall be the amount of annual salary 
up to a specified maximum.  Thus, the phrase "actual salary" in subsection (a) merely indicates that the basis of computation for the circumstances set out in subsection (a) will be the fireman's salary without any statutory maximum, 
i.e.
, the "actual salary."  We do not read subsection (a) as enlarging the meaning of the term "salary".

Plaintiffs further argue that under 
Quinn v. Retirement Board of the Firemen's Annuity and Benefit Fund of Chicago
, 7 Ill. App. 3d 791, 289 N.E.2d 117 (1972) all of the disputed items of compensation must be included in "salary".  We disagree.  In 
Quinn
, this court considered the effect of a 1967 amendment to section 6-163 of the Firemen's Pension Code.  Ill. Rev. Stat. (1967), ch. 108½, par. 6-163 (now 40 ILCS 5/6-163).  The amendment provided that salary, as defined in section 6-111, shall be the basis of computation for annuities and pensions.  Section 6-111 defined salary as "the actual amount of the annual salary."  Ill. Rev. Stat. (1967), ch. 108½, par. 6-111 (now 40 ILCS 5/6-111).  Prior to amendment, section 6-163 provided that in determining annuities and pensions, the annual salary of a firefighter was the amount set out and appropriated in the city's budget for the rank or grade held by the firefighter.

Applying general principles of statutory construction, this court held that the legislature clearly intended, by the 1967 amendment, that the minimum annuity or pension of a participant in the firemen's pension fund would be predicated upon "the actual amount of annual salary appropriated in the annual budget for the particular position occupied by the participant *** rather than on the salary of his highest attained civil service rank."  
Quinn
, 7 Ill. App. 3d at 797.  Accordingly, plaintiff's pension benefits would be based upon his $30,000 annual salary as Fire Commissioner, rather than the $14,000 annual salary he received in his highest attained civil service rank of Division Fire Marshall.  

There is nothing in the 
Quinn
 decision which suggests that fringe benefits and other compensation, such as those at issue here, were or should be included in a firefighter's annual salary when computing pension contributions and benefits.  Rather, the 
Quinn
 decision makes clear that it is the "annual salary 
appropriated in the annual budget for the particular position
 occupied by the participant" that is controlling. (Emphasis added.)  
Quinn
, 7 Ill. App. 3d at 797.

Plaintiffs fail to cite to any portion of the City's annual appropriation ordinances which demonstrates that the disputed items of compensation have been appropriated as "salary" for a particular "position".  The fire department budget is set out in the appropriation ordinance in the same manner as the police department budget.  The budget lists each position within the fire department, the number of such positions, and the relevant "salary" or "rate".  There is no indication that the "salary" or "rate" figures include the additional items of compensation at issue here.  Moreover, in the case of the $1,250 lump sum payment, the firefighters' collective bargaining agreement expressly provides that it is not subject to contributions under the Pension Code.

Without regard to how the appropriation ordinances or collective bargaining agreements treat the various components of a firefighters' total compensation, we find no basis on which to conclude that the additional items of compensation should be included in "salary" for purposes of computing pension deductions, contributions and benefits.   With respect to a firefighter's salary, Article 6 variously refers to (1) the "amount set out and appropriated for the rank or grade held by [the firefighter] in the annual budget or appropriation of the city" (40 ILCS 5/6-163); (2) "the actual amount of the annual salary" (40 ILCS 5/6-111); (3) "the salary which [is] attached to the permanent position of the fireman" (40 ILCS 5/6-211); and (4) "the employee's permanent career service salary" (40 ILCS 5/6-211).  Article 6 also refers simply to "salary" without further modification.  
E.g.
, 40 ILCS 5/6-123, 5/6-128.   None of these provisions evidence an intent by the legislature to include every form of remuneration and every item of compensation within "salary" when computing pension benefits.  

As stated earlier, salary is ordinarily defined as a fixed, periodical payment for services rendered.  See 
Jahn v. Woodstock
, 99 Ill. App. 3d at 209; Webster's Third New International Dictionary 2003 (1993).  It does not include fringe benefits and other forms of compensation.  As in the case of the police officers, we believe that the additional items of compensation paid to firefighters are properly characterized as fringe benefits and thus properly excluded from "salary" under Article 6 of the Pension Code.  

Plaintiffs also advance essentially the same arguments with respect to the firemen's pension fund as they do with respect to the policemen's pension fund, urging a liberal construction of the statute and conformity with various constitutional provisions.  For the reasons already stated, we reject such arguments.  

We note that our decision today finds support in the case law of other jurisdictions which have been called upon to construe the term "salary" under similar circumstances.  See
 
City of Covington v. Board of Trustees of the Policemen's and Firefighters' Retirement Fund
, 903 S.W.2d 517 (Ky. 1995); 
Hohensee v. Regan
, 138 A.D.2d 812, 525 N.Y.S.2d 733 (1988);  
Craig v. City of Huntington
, 179 W.Va. 668, 371 S.E.2d 596 (1988); 
Hill v. City of Lincoln
, 213 Neb. 517, 330 N.W.2d 471 (1983); 
Borough of Beaver v. Liston
, 76 Pa. Commw. 619, 464 A.2d 679 (1983);  
Hilligoss v. LaDow
, 174 Ind. App. 520, 368 N.E.2d 1365 (1977). 

For the foregoing reasons, the decision of the circuit court dismissing plaintiffs' claims with prejudice is affirmed.

AFFIRMED.