2016 IL App (1st) 142050

SECOND DIVISION
June 21, 2016

No. 1-14-2050

| | | |
|---|---|---|
| JAMES CASTRO, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 13 CH 19004 |
| | ) | |
| THE POLICE BOARD OF THE CITY OF CHICAGO | ) | |
| and GARRY F. McCARTHY, Superintendent of Police, | ) | Honorable |
| | ) | Rodolfo Garcia, |
| Respondents-Appellees. | ) | Judge Presiding. |

PRESIDING JUSTICE PIERCE delivered the judgment of the court, with opinion.
Justices Neville and Simon concurred in the judgment and opinion.

**OPINION**

¶ 1    In 1992, the Illinois legislature enacted a statute requiring charges of excessive force against police officers to be brought within five years. 65 ILCS 5/10-1-18.1 (West 2012). The five-year limitation period was chosen because it is the same as that under federal civil rights laws for civil complaints against police officers. 87th Ill. Gen. Assem., Senate Proceedings, Nov. 18, 1992, at 11-12 (statements of Senator Dudycz). Section 10-1-18.1 of the Illinois Municipal Code states:

"Upon the filing of charges for which removal or discharge, or suspension of

more than 30 days is recommended a hearing before the Police Board shall be held. If the charge is based upon an allegation of the use of unreasonable force by a police officer, the charge must be brought within 5 years after the commission of the act upon which the charge is based. The statute of limitations established in this Section 10-1-18.1 shall apply only to acts of unreasonable force occurring on or after the effective date of this amendatory Act of 1992." 65 ILCS 5/10-1-18.1 (West 2012).

¶ 2 On December 13, 2012, Chicago police superintendent Garry McCarthy (Superintendent), filed 19 charges against Chicago police officer James Castro, including five charges of unreasonable use of force by a police officer, stemming from Bruce Jackson's allegations that Castro used unreasonable force during an incident over six years earlier, on August 6, 2006. The Superintendent recommended Castro's discharge from the force. The Chicago police board (Board) ultimately dismissed all five charges against Castro alleging unreasonable use of force pursuant to the five-year statute of limitations. 65 ILCS 5/10-1-18.1 (West 2012). The Board declined to apply the statute of limitations to the remaining 14 charges. Castro was found guilty of those charges and the Board found cause existed to discharge Castro and ordered him terminated from the Chicago police department (Department). The circuit court affirmed the Board's ruling.

¶ 3 Castro now argues that the five-year statute of limitations applies to all of the charges filed against him and that the Board erred in failing to dismiss all of the charges. He does not dispute the Board's factual finding on the evidence presented or the Board's decision to terminate his employment. Rather, he seeks reversal of his discharge based on statutory interpretation of the five-year statute of limitations contained in section 10-1-18.1. 65 ILCS 5/10-1-18.1 (West 2012).

¶ 4            BACKGROUND

¶ 5 On August 6, 2006, Chicago police officer James Castro was on patrol when he encountered Bruce Jackson near Wrigley Field at the intersection of Clark Street and Addison Street. The circumstances of this encounter were disputed by the parties at the Board hearing. On the date of the incident, Jackson told Chicago police personnel that Castro threw him into a police vehicle without justification, punched him in the face, threatened to kill him, and took him outside of Castro's assigned district. Jackson then kicked out the rear passenger window of Castro's police vehicle to escape. When an investigator interviewed Castro about Jackson's allegations in May 2007, Castro denied them.

¶ 6 On December 13, 2012, more than six years later, the Superintendent filed 19 charges against Castro accusing him of violating eight of the rules and regulations of the Department. These rules include: rule 1: Violation of any law or ordinance; rule 2: Any action or conduct which impedes the Department's efforts to achieve its policy and goals or brings discredit upon the Department; rule 8: Disrespect to or maltreatment of any person, while on or off duty; rule 9: Engaging in any unjustified verbal or physical altercation with any person, while on or off duty; rule 10: Inattention to duty; rule 13: Failure adequately to secure and care for Department property; rule 14: Making a false report, written or oral; rule 30: Leaving duty assignment without being properly relieved or without authorization. All of the charges arose out of an incident that occurred on the August 6, 2006, between Castro and Jackson.

¶ 7 Count I of the charges alleged that Castro violated rule 1 when he knowingly detained Jackson without legal authority in the vicinity between 1059 West Addison Street and 1200 Webster Avenue in violation of Illinois statute. Count II charged that Castro violated rule 2 when he knowingly detained Jackson without legal authority in the vicinity between 1059 West

Addison Street and 1200 Webster Avenue thereby impeding the Department's efforts to achieve its policy or bringing discredit on the Department. Count III alleged that Castro violated rule 2 when he failed to properly restrain/handcuff Jackson while he was in the back of the squad car thereby impeding the Department's efforts to achieve its policy or bringing discredit on the Department. Count IV alleged that Castro violated rule 2 when he told Jackson "Nigger you're going to die today, I'm going to kill you," or words to that effect thereby impeding the Department's efforts to achieve its policy or bringing discredit on the Department. Count V stated that Castro violated rule 2 when he failed to properly restrain/handcuff Jackson while he was in the back of the squad car that allowed Jackson to break a window of the squad car thereby impeding the Department's efforts to achieve its policy or bringing discredit on the Department. Count VI charged that Castro violated rule 2 when he left the district of his assignment and travelled to the vicinity of 1200 West Webster Avenue without permission or authorization thereby impeding the Department's efforts to achieve its policy or bringing discredit on the Department. Count VII alleged that Castro violated rule 2 when he falsified a general offense case report stating that the window in his patrol car was broken when he was parked at 28 South Wabash Avenue thereby impeding the Department's efforts to achieve its policy or bringing discredit on the Department. Count VIII alleged that Castro violated rule 2 when he falsified a department vehicle traffic crash or damage report stating that his squad car window was damaged when he was parked at 28 South Wabash Avenue thereby impeding the Department's efforts to achieve its policy or bringing discredit on the Department. In count IX the Superintendent alleged that Castro violated rule 2 when he provided a false statement to Lieutenant Mullane and/or Lieutenant Schmidt when Castro stated that his squad car window was damaged when he was parked at 28 South Wabash Avenue thereby impeding the

Department's efforts to achieve its policy or bringing discredit on the Department. Count X alleged that Castro violated rule 2 when he provided a false statement to Lieutenant Mullane when Castro stated that he had written Jackson a citation and then released him thereby impeding the Department's efforts to achieve its policy or bringing discredit on the Department.

¶ 8    The Superintendent charged in count XI that Castro violated rule 8 when he told Jackson, Nigger you're going to die today, I'm going to kill you," thereby disrespecting or maltreating any person while on or off duty. Count XII alleged that Castro violated rule 9 when he told Jackson "Nigger you're going to die today, I'm going to kill you," thereby engaging in any unjustified verbal or physical altercation with any person while on or off duty. Count XIII charged Castro with violating rule 10 for failing to properly restrain or handcuff Jackson in the backseat of the squad car thereby being inattentive to duty. Count XIV charged Castro with violating rule 13 for failing to properly restrain or handcuff Jackson in the backseat of the squad car thereby failing to adequately secure and care for Department property.

¶ 9    Count XV alleged that Castro violated rule 14 when he falsified a general offense case report stating that the window in his patrol car was broken when he was parked at 28 South Wabash Avenue thereby making a false report. Count XVI alleged that Castro violated rule 14 when he falsified a department vehicle traffic crash or damage report when he filed a report stating that the window in his patrol car was broken when he was parked at 28 South Wabash Avenue thereby making a false report. It was also alleged in count XVII that Castro violated rule 14 when he provided a false statement to Lieutenant Mullane and/or Lieutenant Schmidt when Castro stated that his squad car window was damaged when he was parked at 28 South Wabash Avenue thereby making a false report. In count XVIII, it was alleged that Castro provided a false report to Lieutenant Mullane when Castro stated that he had written a citation to Jackson and

released him thereby making a false oral report. Finally, count XIV charged Castro with violating rule 30 because he travelled outside of his district of assignment without permission or authorization.

¶ 10    At a hearing before the Board, Castro testified that he began his career as a Chicago police officer in October 1995 and that he worked as a patrol officer his entire career. On August 6, 2006, he was assigned to beat No. 1924 and drove Department vehicle No. 9510 in the 19th District. At about 5 p.m. on that date, Castro observed Bruce Jackson on the corner of Clark Street and Addison Street grabbing people and asking for change. Castro put Jackson in his patrol car and drove him 20 to 30 feet away from the corner of Clark Street and Addison Street. Castro gave Jackson an administrative notice of an ordinance violation for panhandling. Castro did not handcuff Jackson, nor did he place him under arrest. Castro told Jackson the reason for the violation and then released him. Records showed that Castro requested a number for the citation over the radio at 5:03 p.m., and then cleared himself from the stop at 5:06 p.m.

¶ 11    Castro testified that after he issued the citation and released Jackson, he continued his patrol of the area. Records indicate that Castro made a street stop in the area of 2428 North Lincoln Avenue at 5:09 p.m. Castro could not recall the details of this stop at the hearing or when he gave a statement during the investigation in May 2007.

¶ 12    After the street stop, Castro requested permission to leave his district for a "uniform adjustment." After he received permission he traveled to the 1st district to retrieve a handcuff key from another officer who was working at Grant Park. He testified that at the time he requested the uniform adjustment he had a spare handcuff key. Castro stated he could not recall the officer's name and he had not seen her since the night she borrowed the handcuff key.

¶ 13    Castro testified he parked his squad car at 28 South Wabash Avenue. He could not find

the officer who had the key. When he returned to his squad car he saw that the rear passenger window had been broken. Castro completed a vehicle damage report indicating that the window was broken in the area of 28 South Wabash Avenue. He also informed Lieutenant William Mullane that the squad window was broken at that location.

¶ 14    Castro denied that he was in the vicinity of 1200 West Webster Avenue on August 6, 2006. He testified he last saw Jackson that day near Clark Street and Addison Street. He denied that Jackson broke the car window, or that Jackson jumped out of the car. He stated he had no idea how Jackson could have ended up at 1200 West Webster Avenue by 5:10 p.m., where Jackson placed the 911 phone call.

¶ 15    Bruce Jackson testified that he was selling newspapers in the area of Wrigley Field in August 2006, when the encounter with Castro occurred. Jackson stated that he was roughly grabbed by Castro and thrown in the backseat of the police vehicle without being told why. Jackson was not handcuffed in the backseat of the vehicle. He testified that Castro threatened to kill him and used a racial slur. Jackson stated that as Castro started to drive, Jackson realized that Castro was not driving towards the nearby police station and began yelling at him. Jackson testified Castro said, "I'm going to kill you" and "nigger, you're going to die." Jackson became afraid Castro would carry out these threats, so he kicked out the rear passenger window of the squad car, opened the door, and fled. Jackson stated that he picked up a piece of the glass off the ground as proof of what happened. He then called 911 from a nearby phone and reported what happened.

¶ 16    The transcript of the 911 call was admitted at the hearing as an excited utterance. The transcript shows that Jackson called 911 at 5:10 p.m., on August 6, 2006, from 1200 West Webster Avenue. Jackson reported that an officer threw him into police car number 9-10-50 near

Wrigley Field. The officer hit him, knocking out his teeth, and threatened to kill him stating, "Nigger, you're going to get killed." Jackson also reported that he had kicked out the window of the police car and jumped out of the car. After placing the 911 call, Jackson was taken to the hospital for medical treatment. Jackson was also interviewed by police officers at this time. Jackson subsequently gave a statement to an investigator from the Office of Professional Standards (OPS).

¶ 17   After listening to a recording of the call at the hearing, Jackson stated he had accurately reported to the 911 operator everything that had happened, except that the officer had not punched him in the mouth; instead Jackson lost two teeth when the officer threw him forcefully into the car. Jackson also testified he attempted to view the number on the police car as it drove off and reported what he could recall to the 911 operator. Although Jackson did not recognize Castro at the hearing, he explained that everything happened so fast and he was "hysterical" at the time of the incident.

¶ 18   Shannon Hayes, an investigator for the City of Chicago's Independent Police Review Authority (IPRA), formerly known as the OPS, investigated the incident involving Castro and Jackson in August 2006. Hayes went to Racine Avenue and Webster Avenue on August 8, 2006, two days after the incident and recovered broken glass from that location. She also went to 28 South Wabash Avenue and did not observe any broken glass at that location.

¶ 19   Hayes interviewed Castro on May 17, 2007. She also interviewed Jackson during the investigation, and he gave her a broken piece of glass he allegedly recovered from his clothing. Hayes sent the glass received from Jackson, the glass recovered from the street at Racine Avenue and Webster Avenue, and glass recovered from the police vehicle driven by Castro to the Illinois State Police crime lab for testing sometime in 2006. The crime lab finished their report on June

8, 2007, however, Hayes testified that she did not receive the report until five years later, on July 9, 2012, due to a "paperwork mix-up." Hayes did not interview any additional witnesses for the rest of 2007, nor did she interview any witnesses from 2008 to 2012.

¶ 20    Castro's superior officers testified regarding conversations they had with Castro regarding the broken squad car window, how it occurred, and the subsequent reports that were generated regarding the window, as well as the department protocol for leaving the assigned district.

¶ 21    Glass fragments recovered from Jackson, in the street at 2206 North Racine Avenue, and on the floor of Castro's police vehicle were compared and there was a "good probability of common origin" for the three glass samples. This report was completed on June 8, 2007, and was available to the Department upon its completion.

¶ 22    Several of Castro's superiors and fellow officers testified as character witnesses for Castro. The officers testified that Castro was trustworthy, professional, and courteous.

¶ 23    Following the hearing, the Board reviewed the record of the proceedings and viewed the videotaped testimony of the witnesses. The Board then *sua sponte* ordered both parties to submit briefs to address whether the "five-year statute of limitations established in 65 ILCS 5/10-1-18.1 applies to any of the charges filed against [Castro]–that is, whether any of the charges filed against [Castro] are based upon an allegation of the use of unreasonable force by a police officer."

¶ 24    The Board issued its findings and decision on June 20, 2013. A majority of the Board held that statute of limitations barred counts I (illegal detention/violation of Illinois statue), II (illegal detention/impeding policy and goals/bringing discredit), IV (threats/racial slurs/impeding policy and goal/bringing discredit), XI (threats/racial slurs/disrespect/maltreatment), and XII

(threats/racial slurs/verbal or physical altercation), and dismissed those five counts. With respect to the dismissed counts, the Board stated:

> "The Board finds that the charges that the Respondent knowingly detained Bruce Jackson without legal authority and stated to Bruce Jackson, "Nigger you're going to die today, I'm going to kill you," or words to that effect, are based upon an allegation of the use of unreasonable force by a police officer. Bruce Jackson alleged that a police officer threw him into a police car for no reason and threatened to kill him ***. The Board finds that Jackson's allegation of physical maltreatment accompanied by a threat of physical harm is an allegation of the use of unreasonable force. The Board further finds that this allegation led directly to Officer Castro being charged with violating rule 1 [count I, rule 2 [counts II and IV], rule 8 [count XI], and rule 9 [count XII]. As a result, these charges fall within the ambit of the Statute of Limitations and therefore must be time-barred."

Two members of the Board concurred in part and dissented in part from the Board's findings stating that they did not believe that the statute of limitations applied to counts I and II.

¶ 25    As for the remaining 14 counts (failing to properly restrain/handcuff Jackson, leaving the district without authorization, making false reports and false statement), six of the nine Board members found that the charges were "not based upon an allegation of the use of unreasonable force by a police officer" because they were not directly related to Jackson's allegation of physical maltreatment, and, therefore, the statute of limitation did not apply to those charges. Three members of the Board dissented from this finding stating,

> "We find that Jackson's initial allegation of physical maltreatment accompanied by a threat of physical harm is an allegation of the use of unreasonable force that led directly to all charges being filed in this case. If Jackson had not called 911 and made this

allegation, none of the charges against Officer Castro would have been filed with the Police Board. As a result, we find that all of the charges fall within the ambit of the Statute of Limitations and therefore are time-barred."

¶ 26    The majority of the Board, six of the nine members, found Castro guilty of the remaining 14 counts and found cause for discharge. The Board concurred in the Superintendent's recommendation and ordered Castro discharged from the Department. The circuit court affirmed the Board on administrative review. Castro filed this timely appeal.

¶ 27                                    ANALYSIS

¶ 28    Castro's only argument on appeal is that the five-year statute of limitations applies to all of the charges filed against him and that the Board erred in failing to dismiss all of the charges. He does not contest the Board's factual determinations or finding of cause for discharge from the department.

¶ 29    Illinois Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2012)) governs our review of the Board's decision. 735 ILCS 5/3-102 (West 2012). On administrative review, this court reviews the administrative agency's final decision, not the decision of the circuit court. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006); *Pedersen v. Village of Hoffman Estates*, 2014 IL App (1st) 123402, ¶ 48. An administrative agency's interpretation of a statute's language constitutes a question of law, which we review *de novo*. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 209 (2008). We will not substitute our interpretation of a statutory provision for a reasonable interpretation adopted by the agency charged with the statute's administration. *Hadley v. Illinois Department of Corrections*, 224 Ill. 2d 365, 371 (2007).

¶ 30    The primary object of statutory construction is to give effect to the true intent of the

legislature. *Holland v. City of Chicago*, 289 Ill. App. 3d 682, 685-86 (1997). "Legislative intent is best determined from the language of the statute itself ***." *General Motors Corp. v. State of Illinois Motor Vehicle Board*, 224 Ill. 2d 1, 13 (2007). When the language of a statute is clear and unambiguous, it must be applied without resort to other aids of construction. *Alternate Fuels, Inc. v. Director of the Illinois Environmental Protection Agency*, 215 Ill. 2d 219, 238 (2004). Where a statute is ambiguous, however, courts will give substantial weight and deference to an interpretation by the agency charged with the administration and enforcement of the statute. *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n*, 95 Ill. 2d 142, 152 (1983). "Ambiguity is, however, a prerequisite: the statute must be ambiguous." *Illinois Bell Telephone Co v. Illinois Commerce Comm'n*, 362 Ill. App. 3d 652, 657 (2005). If a statute is ambiguous, "the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation." (Internal quotation marks omitted.) *Id.* Instead, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." (Internal quotation marks omitted.) *Id.* "A court will not substitute its own construction of a statutory provision for a reasonable interpretation adopted by the agency charged with the statute's administration." (Internal quotation marks omitted.) *Id.*

¶ 31     Our threshold question therefore is whether the five-year statute of limitations found in section 10-1-18.1 (65 ILCS 5/10-1-18.1 (West 2012)) is ambiguous. We note that neither party contends that section 10-1-18.1 is ambiguous. Both parties merely contend that the plain language of the statute supports its interpretation. We are not bound by the parties seeming agreement that the statute is not ambiguous. *Hyatt Corp. v. Sweet*, 230 Ill. App. 3d 423, 429 (1992).

¶ 32     A statute is not ambiguous merely because the parties disagree as to its meaning. *Kaider*

*v. Hamos*, 2012 IL App (1st) 111109, ¶ 11. A statute is ambiguous if its meaning cannot be interpreted from its plain language or if it is capable of being understood by reasonably well-informed persons in more than one manner. *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 395-96 (2003). Where a statute does not define the terms it uses, "the words used in a statute will be given their plain and ordinary meanings." *Holland*, 289 Ill. App. 3d at 686. "In ascertaining the plain and ordinary meaning of words, courts have used the dictionary as a resource." *Id.*

¶ 33    The relevant portion of section 10-1-18.1 reads,

> "Upon the filing of charges for which removal or discharge, or suspension of more than 30 days is recommended a hearing before the Police Board shall be held. If the charge is based upon an allegation of the use of unreasonable force by a police officer, the charge must be brought within 5 years after the commission of the act upon which the charge is based. The statute of limitations established in this Section 10-1-18.1 shall apply only to acts of unreasonable force occurring on or after the effective date of this amendatory Act of 1992." 65 ILCS 5/10-1-18.1 (West 2012).

¶ 34    A "charge" ordinarily means a "formal accusation of an offense as a preliminary step to prosecution." The Illinois Supreme Court has construed the term "based on" to mean: to "form the foundation or essence of the offense." *People v. Caruso*, 119 Ill. 2d 376, 383 (1987). The United States Supreme Court has similarly explained that "based upon" is "read most naturally to mean those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case." *Saudi Arabia v. Nelson*, 507 U.S. 349, 357 (1993).

¶ 35    Castro urges us to interpret section 10-1-18.1 to mean that where disciplinary proceedings are brought that include charges "based upon" an allegation of unreasonable use of force by a police officer all charges that arose out of the incident giving rise to the disciplinary

proceeding must be brought within five years from the date the alleged act of force was committed. Castro contends that the allegations in the complaint against him, *i.e.*, that he threw Jackson into a police vehicle without justification, threatened to kill him and drove him to the area of Racine Avenue and Webster Avenue, were classified as allegations of excessive force by the Board, and, therefore, every charge that stemmed from that contact was subject to the five-year statute of limitations including those that did not involve the unreasonable use of force: filing false reports, leaving his assigned district and making false statements that impede or discredit the department.

¶ 36    The Board and Superintendent respond that Castro misconstrues the plain language of section 10-1-18.1 and argue that the plain language of section 10-1-18.1 "focuses on the elements necessary to prove each particular charge, and none of the charges of which the Board found Castro guilty involved the use of unreasonable force as an element." Moreover, the Board and Superintendent argue that accepting Castro's construction of section 10-1-18.1 would lead to absurd results because it would allow an officer who commits misconduct to escape discipline after five years so long as that officer also used unreasonable force at the same time. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000) (courts should avoid a construction that leads to absurd results). We agree with the Board that the statute applies only to those charges that require evidence of unreasonable use of force as an element of the charge.

¶ 37    Looking at the plain language of the statute, it is clear that the statute of limitations section contained in section 10-1-18.1 is not ambiguous. Its meaning is clear. Only those charges "based upon an allegation of the use of unreasonable use of force" must be brought within five years. The use of the terms "the charge," "an allegation," and "the act" evinces the legislature's intent that the statute of limitations applies only to those "charges," "allegations," and "acts" of

unreasonable force that must be established and not to other acts of misconduct that may result in disciplinary proceedings. If the legislature wanted to impose a straight five-year limitation on bringing disciplinary charges against an officer it would have simply stated that charges have to be brought within five years from the date of the alleged misconduct. There would be no need to specifically reference one specific form of misconduct (unreasonable use of force) to the exclusion of all other potential offending activity (making false statements, filing false reports, leaving the assigned district, improperly handcuffing a prisoner).

¶ 38    We recognize that in almost every disciplinary case where the charge of the use of unreasonable force is brought against an officer additional charges are routinely filed alleging the failure to adhere to other departmental rules or regulations arising out of a single event. In this case, the additional charges against Castro stemmed from his attempts to cover up his contact with Jackson and the damage to his patrol car. While these other charges are undoubtedly "based on" the events of August 6, 2006, between Castro and Jackson, these charges do not require the Superintendent to prove the excessive use of force to prevail. For example, to prove the charge that Castro left his assigned district without approval did not require evidence of the use of excessive force against Jackson. The charges of filing a false report or making a false statement concerning the broken squad car window did not require evidence of the use of excessive force against Jackson. Nor did the charge of failing to secure and care for department property. Because the legislature only specified charges involving unreasonable use of force, and no others, it is only those charges that require proof of unreasonable excessive use of force that are subject to the five-year statute of limitations.

¶ 39    Support for our conclusion can be found in section 10-1-18.2 dealing with home rule preemption. Section 10-1-18.2 states in relevant part:

"No municipality, including a municipality that is a home rule unit, may regulate the period of time or establish or enforce a statute of limitations relating to charges brought against a police officer before a Police Board, Civil Service Commission, or other board or officer empowered by law or ordinance to investigate police misconduct if the charge is based upon an allegation of the use of unreasonable force by a police officer. The statute of limitations established in Sections 10-1-18 and 10-1-18.1 for those charges are an exclusive exercise of powers and functions by the State under paragraph (h) of Section 6 of Article VII of the Illinois Constitution." 65 ILCS 5/10-1-18.2 (West 2012).

¶ 40    It is clear from section 10-1-18.2 that the legislature was specifically focused on charges involving the unreasonable use of force when enacting the five-year statute of limitations and not all of the other charges related to an event where unreasonable force is alleged. Again, it would have been a simple legislative act to include a broad limitations period for all disciplinary matters if that was the legislature's intention. No broad limitation period applicable to all disciplinary offenses was enacted.

¶ 41    Accordingly, we find that the Board was correct in dismissing those charges dealing specifically with the unreasonable use of force and allowing the other charges to remain. Therefore, we find the five-year statute of limitations contained in section 10-1-18.1 relating to excessive force does not apply to the 14 charges Castro was found guilty of violating. The Board's decision is affirmed.

¶ 42    Finally, we find it necessary to express our dismay with the unreasonable length of time the Superintendent took bringing charges in this case. This incident occurred on August 6, 2006. All accounts indicate that IPRA's investigation into Jackson's allegations and the glass analysis

report were completed by the end of June 2007. The Superintendent brought charges more than six years after the incident, without any explanation other than a "mix-up" occurred. A delay of this magnitude does nothing to foster the public's interest in effective oversight and supervision of police officers nor does it foster the protection of a police officer's right to due process in defending serious disciplinary charges. The passage of an unreasonable amount of time adversely affects witness availability and recollection and the officer's ability to present a meaningful and effective defense to unjustified charges. The legislature has seen fit to impose a limitations period for incidents involving alleged use of unreasonable force. As counsel for petitioner noted at oral argument, there are statutes of limitation for bringing civil actions (usually 5 years (735 ILCS 5/13-205 (West 2014))), for filing misdemeanor charges (one year and six months (720 ILCS 5/3-5(b) (West 2014))), and for filing most felony charges (3 years (720 ILCS 5/3-5(b) (West 2014))), yet, under existing statutes and ordinances, an officer's career is at risk in perpetuity for any alleged misconduct that does not involve proof of unreasonable use of force. This does not serve the public interest or accommodate the property interests of the officer. We welcome consideration of a limitations period by the city council and/or the legislature in all disciplinary matters involving police officers so that the public interest in determining whether an officer is eligible to remain on the police force can be promptly addressed and, at the same time, afford the officer the certainty of closure to eliminate the threat of disciplinary proceedings being brought against him or her in perpetuity.

¶ 43                                    CONCLUSION

¶ 44    For the foregoing reasons, we affirm the final decision of the Board terminating Castro's employment.

¶ 45    Affirmed.