FIRST DIVISION

November 13, 2000

No. 1-99-1953

HOME INTERIORS AND GIFTS, INC., 

Plaintiff-Appellant, 

v.

THE DEPARTMENT OF REVENUE, 

Defendant-Appellee.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

John A. Ward,

Judge Presiding.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Plaintiff, Home Interiors & Gifts, Inc., appeals the order of the circuit court affirming the Department of Revenue's (Department) finding that plaintiff owes taxes on interest income it earned in 1989 and 1990.  In 1993, the Department issued to plaintiff a notice of business income tax deficiency.  The Department determined that plaintiff's corporate tax returns for the years of 1989 and 1990 should be adjusted to reflect certain interest income plaintiff earned from short-term investments in those years.  Plaintiff filed a protest, and the parties submitted a stipulation of facts to an administrative law judge (ALJ).  The ALJ recommended that plaintiff owed additional corporate taxes for the years of 1989 and 1990, finding that all the interest income from plaintiff's short-term investments constituted apportionable business income.  The Director of the Department adopted  this recommendation.  Plaintiff then sought administrative review of the Director's decision.  The circuit court affirmed the Director's decision.  On appeal, plaintiff argues that imposition of the Illinois income tax on its entire interest income from its short-term investment accounts violates the due process clause and the commerce clause of the United States Constitution.  

The parties stipulated to the following facts.  Plaintiff is a Texas corporation that sells wholesale home decorative accessories nationwide.  In 1989 and 1990, plaintiff generated sufficient cash to sustain its business operation and, as a result, had modest working capital requirements and no need to borrow funds from outside sources.  Plaintiff invested its excess capital in long-term and short-term investments.  During 1989 and 1990, plaintiff purposefully invested in short-term securities, because it was waiting for more favorable developments in long-term money markets and the Texas commercial real estate market.

Plaintiff maintained its short-term investments in five accounts: Coppell Bank, Small Bank, Municipal Bank, Bank One, and Salomon Brothers.  Each account earned plaintiff interest income, and  plaintiff reported these accounts as investments on its balance sheet.  On both its Texas franchise returns and its Illinois corporate income taxes for years 1989 and 1990, plaintiff reported this interest income as allocable only to Texas.  The Department acknowledged that the interest from the Salomon Brothers account was not apportionable, because this account was not designated or available as working capital and was never used in plaintiff's trade or business. 

The parties stipulated the following about the funds in the four other short-term investment accounts: "the funds from these general accounts were utilized in part as working capital reserve.  None of these funds were *** designated for a particular use, and all of the funds were available for use in the day to day business operations of the [plaintiff]." 

In 1989 and 1990, the four investment accounts at issue generated interest income of $7,681,334 and $11,017,682.  The Department sought to tax all this income as apportionable.   Plaintiff claimed that only a portion of the income was apportionable.  The parties then stipulated to the results of a formula created by plaintiff which calculated the greatest percent invasion into each account for each year to determine the amount of interest income that was attributable to its use of the funds and constituted business income.  The Department agreed with the formula but objected to whether "any methodology can bifurcate an account to clearly reflect that portion is used in the business and generates business income and that portion is not used in the business and generates non-business income that is not apportionable."  Applying plaintiff's formula, the parties stipulated that if only a portion of Home Interiors' income from its four investments is to be apportioned, the amounts of income to be apportioned are $1,912,652.17 in 1989 and $1,650,448.80 in 1990. 

The ALJ found that plaintiff regularly invested its excess cash in short-term accounts and considered these accounts as working capital reserve.  The ALJ also rejected plaintiff's formula for determining the amount of interest income that was apportionable.  The ALJ believed that because plaintiff "admitted that these [short-term investment] funds were used for working capital," then all the interest income constituted business income apportionable to Illinois.  The Director of the Department adopted the ALJ's decision that all of the interest income from Home Interiors' four investments is apportionable business income and the circuit court affirmed.  The circuit court first found that plaintiff's entire interest income in the short-term accounts constituted business income under the Illinois Income Tax Act (35 ILCS 5/1501(a)(1) (West 1998)).  The circuit court next rejected plaintiff's constitutional claim.  The circuit court found that because plaintiff invested these funds in accounts "used for working capital" and that this undivided income was the source of "funds necessary for day-to-day operations," it had failed to meet its burden to establish that only a portion of the income was apportionable.  The circuit court characterized plaintiff's formula as "conceptually flawed" and, like the ALJ, rejected it.  This appeal followed.

On appeal, plaintiff only asserts its constitutional claim.  Plaintiff argues that the due process and commerce clauses give Illinois the authority to tax only the interest income in the short-term investments accounts that plaintiff used as working capital.  Therefore, according to plaintiff, only the income identified by its formula as being 
used
 as working capital is apportionable ($1,912,652.17 in 1989 and $1,650,448.80 in 1990).  The Department counters that, because all the funds in the short-term investment accounts were 
available
 for plaintiff's business operations, all the income from these accounts is subject to the Illinois business income tax and is apportionable. 

Under the Administrative Review Law (735 ILCS 5/3-101 
et seq. 
(West 1998)), we review the final decision of the administrative agency and not the decision of the circuit court.  
Richard's Tire Co. v. Zehnder
, 295 Ill. App. 3d 48, 56 (1998).  While the reviewing court defers to the agency's findings of fact (735 ILCS 5/3-110 (West 1998)), it conducts an independent review of its conclusions of law
.  
County of Cook
 
v. Licensed Practical Nurses Ass'n of Illinois
, 
Division I
, 284 Ill. App. 3d 145, 152 (1996).  When the agency decides a mixed question of law and fact, we review its decision under a clearly erroneous standard.  
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191 (1998).  When the issue on appeal is one of law only and involves no question of fact, we review the agency's decision 
de novo
.  
Rockwood Holding Co. v. Department of Revenue
, 312 Ill. App. 3d 1120, 1123 (2000).  

Relying on 
City of Belvidere
, the Department argues that we should apply the clearly erroneous standard.  In 
City of Belvidere
, the issue raised was whether the city's refusal to engage in collective bargaining constituted an unfair labor practice pursuant to the Illinois Public Labor Relations Act (Act) (5 ILCS 315/1 
et seq.
 (West 1998)); 
City of Belvidere
, 181 Ill. 2d at 202.  The court found that the agency's decision required it to make both a factual determination of the city's practices and a legal interpretation of the Act.  The court held that because the agency's decision involved a mixed question of law and fact, the clearly erroneous standard was the correct standard of review.  
City of Belvidere
, 181 Ill. 2d at 205.

In this case, unlike 
City of Belvidere
, the parties stipulated to the facts and have not asked us to review any factual findings.  On appeal plaintiff challenges the constitutionality of apportioning all its interest income from these accounts.  Thus, the only issue before us involves a question of law, namely, whether the United States Constitution prohibits the Department from apportioning interest income that plaintiff had 
available 
as working capital, but did not 
use
 as working capital.  It is well settled that an administrative agency has no authority to declare a statute unconstitutional or even to question its validity. 
 Texaco-Cities Service Pipeline Co. v. McGaw
, 182 Ill. 2d 262, 278 (1998).  Questions of law decided by an agency are not entitled to deference and are reviewed 
de novo
.  
XL Disposal Corp. v. Zehnder
, 304 Ill. App. 3d 202 (1999).  The 
de novo
 standard of review applies to the constitutional issue of law raised by Home Interiors.

The issue is whether all the interest income from plaintiff's short-term investments constituted apportionable business income subject to Illinois tax.  The United State Constitution 
requires that the taxpayer have "some minimum connection" with the taxing body and that the tax is "rationally related to 'values connected with the taxing [s]tate.' " 
 Quill Corp. v. North Dakota
, 504 U.S. 298, 306, 119 L. Ed. 2d 91, 102, 112 S. Ct. 1904, 1909-10 (1992), quoting 
Moorman Manufacturing Co. v. G.D. Bair
, 437 U.S. 267, 273, 57 L. Ed. 2d 197, 204, 98 S. Ct. 2340, 2344 (1978).  Thus, a state may not tax value outside its borders.  
Allied-Signal, Inc. v. Director, Division of Taxation
, 504 U.S. 768, 119 L. Ed. 2d 533, 112 S. Ct. 2251 (1992).  The due process and commerce clauses of the United States Constitution require " 'some definite link, some minimum connection between a state and the *** transaction it seeks to tax.' "  
Quill Corp.
, 504 U.S. at 306, 119 L. Ed. 2d at 102, 112 S. Ct. at 1909, quoting 
Miller Brothers Co. v. Maryland
, 347 U.S. 340, 344-45, 98 L. Ed. 744, 748, 74 S. Ct. 535, 539 (1954).  A state may, however, tax the multistate income of a nondomiciliary corporation if a minimal connection exists between the corporation's activities and the taxing state and a rational relationship exists between "the income attributed to the taxing State and the intrastate value of the corporate business."  
Allied-Signal, Inc.
, 504 U.S. at 772, 119 L. Ed. 2d at 542, 112 S. Ct. at 2255. 

To determine whether a state may apportion corporate income of a nondomiciliary corporation, the United State Supreme Court has applied the "unitary relationship" and "operational function" tests.  Under the unitary relationship test, the payee and the payor of the dividend or other income have a unitary business relationship.  More specifically, although a business may have subsidiaries, divisions, or common ownership of other businesses that operate in different jurisdictions, a single state may tax all the income earned and apportion it because the businesses have common managerial or operational resources that produce economies of scale and a substantial sharing of values.  
Container Corp. of America v. Franchise Tax Board
, 463 U.S. 159, 179, 77 L. Ed. 2d 545, 
562, 103 S. Ct. 2933, 2947 (1983).  The Court has stated that " '[t]he linchpin of apportionability in the field of state income taxation is the unitary-business principle.' "  
ASARCO Inc. v.  Idaho State Tax Comm'n
, 458 U.S. 307, 317, 73 L. Ed. 2d 787, 795, 102 S. Ct. 3103, 3109 (1982), quoting 
Mobil Oil Corp. v. Commissioner of Taxes
, 445 U.S. 425, 439-40, 63 L. Ed. 2d 510, 522, 100 S. Ct. 1223, 1232-33 (1980). 

In this case, both parties agree that the unitary relationship test does not give the Department the authority to tax all the interest income generated in the four short-term investment accounts.  Plaintiff has no unitary relationship with the four banks that have paid plaintiff the interest on the short-term investment accounts.  The Department never sought to apportion the interest income based on a unitary relationship between Home Interiors and the holders of the general accounts.  Each of these banks is a completely separate entity from plaintiff.  The basis for the Department's determination is that the general accounts are a working capital reserve fund and thus interest earned by these accounts is also operational funds.  Therefore, we must determine if the Department's apportionment of all the income satisfies the operational function test. 

Under the operational function test, a state may apportion income even though no unitary relationship exists between payee and payor. 
 Allied-Signal, Inc.
, 504 U.S. at 787, 119 L. Ed. 2d at 552, 112 S. Ct. at 2263.  The state has the authority to apportion the income because the capital transaction serves an operational rather than an investment function.  
Allied-Signal
, 
Inc.
,
 
504 U.S. at 787, 119 L. Ed. 2d at 552, 112 S. Ct. at  2263.  The relevant inquiry in determining whether an asset serves an investment or operational function "focuses on the objective characteristics of the asset's use and its relation to the taxpayer and its activities within the taxing State."  
Allied-Signal
, 
Inc.
,
 
504 U.S. at 785, 119 L. Ed. 2d at 550, 112 S. Ct. at  2262.  The Court has noted that "a state may include within the apportionable income of a nondomiciliary corporation the interest earned on short-term deposits in a bank located in another State if that income forms part of the working capital of the corporation's unitary business, notwithstanding the absence of a unitary relationship between the corporation and the bank." 
 Allied-Signal, Inc.
, 504 U.S. at 787-88, 119 L. Ed. 2d at 552, 112 S. Ct. at 2263.  The Court concluded that the apportionability of interest turns on whether the interest "forms part of the working capital of the [taxpayer's] unitary business."  
Allied-Signal, Inc.
, 504 U.S. at 787, 119 L. Ed. 2d at 552, 112 S. Ct. at 2263.

In 
Allied-Signal
, 
Inc.
, the Court discussed a specific scenario addressed  in 
ASARCO Inc.
  In that case, the Court found that Idaho could not apportion certain investment income that a subsidiary of ASARCO earned because of a lack of a unitary relationship.  Although the Court had not specifically adopted the operational function test, the dissent referenced this test in concluding that ASARCO's subsidiary's investment income should be apportionable.  The dissent relied on the  operational nature of the source of the income.  
ASARCO Inc.
, 458 U.S. at 337-38, 73 L. Ed. 2d at 808-09, 102 S. Ct. at 3120.  (O'Connor, J., dissenting).  According to the majority, the dissent characterized ASARCO's use of these investment funds as "interim uses of idle funds 'accumulated for the future operation of [ASARCO's] own primary business.' "  
ASARCO Inc.
, 458 U.S. at 324 n.21, 73 L. Ed. 2d at 800 n.21, 102 S. Ct. at 3113 n.21.  To rebut the dissent's claim that the investment in the stock served an operational function, the majority cited the trial court's factual findings.  The trial court specifically found that ASARCO never had been required to utilize its stock as security for any type of borrowing and that ASARCO had sufficient clash flow to run all of its operations without the need of any capital from this intangible income.  
ASARCO Inc.
, 458 U.S. at 324 n.21, 73 L. Ed. 2d at 800 n.21, 102 S. Ct. at 3113 n.21.  The Court in 
Allied-Signal, Inc. 
agreed with the dissent's legal conclusion in 
ASARCO
 that if the stock investments in that case constituted " 'interim uses of idle funds' " accumulated for future operations, then they would have been apportionable. 
 Allied-Signal, Inc.
,
 
504 U.S. at 787, 119 L. Ed. 2d at 552, 112 S. Ct. at 2263, quoting  
ASARCO Inc.
, 458 U.S. at 324 n.21, 73 L. Ed. 2d at 800 n.21, 102 S. Ct. at 3113 n.21.  Thus, reading these two cases together, we conclude that the corporation's use of the funds not the mere availability of the funds is the guiding factor in determining whether the income sought to be apportioned has an operational or investment function.

In this case, the operational function test only permits the Department to tax a portion of plaintiff's income from the short-term investment accounts, because only part of these funds has been used as working capital.  The majority of the funds within these accounts served an investment function and did not form part of the working capital of plaintiff's business.  Home Interior's funds in its four investment accounts were far in excess of its working capital needs.  In short, the record does not establish an interim use of all these  funds for an operational purpose.  Like the investment income in 
ASARCO Inc.
, plaintiff did not use these funds for security on a loan or any other financial obligation and did not need these funds in order to operate its business.  Home Interiors has never treated the entire balance in its four investment accounts as "operational" funds.  Home Interiors reported the entire balance of its four investment accounts on its financial statements as investments, and not as part of its working capital or operating assets.  Home Interiors did not use its investments as collateral for any loans.  When filing its Illinois corporate income tax returns and its Texas franchise tax returns for the years at issue, Home Interiors consistently reported the interest income from its four investments as investment income.  In fact, Home Interiors reported all of the interest at issue as allocable to Texas (its commercial domicile) for purposes of calculating its Texas franchise tax, and it reported and paid Texas franchise tax on the full amount of interest income generated by its four investments.

The defendant has stipulated that "[d]uring the audit period, the funds from these 
general accounts, except the Salomon general account (see Exhibit E), were utilized 
in part
 as a working capital reserve.  None of the funds in these general accounts were designated for a particular use, and all of the funds were available for use in the day to day business operations of the Taxpayer."  (Emphasis added.)  Significantly, in 1989, $87.9 million of Home Interiors' investments remained intact and was not used for operational purposes.  In 1990, $120.6 million of Home Interiors' investments remained intact and was not used for operational purposes.  In each year, the investment balance remaining intact exceeded 60% of the highest end-of-month balance.  Additionally, the investment balance remaining intact exceeded 75% of the average end-of-month balance in each year.  Based on the foregoing facts, it is evident that Home Interiors did not 
use all 
of its funds in its four investments, and the interest income therefrom, for working capital purposes.  Therefore, plaintiff has demonstrated that it has not used all of these funds for operational purposes and has met its burden to establish that only a portion of the income was apportionable.   

The Department concedes that plaintiff did not use all the funds within the short-term accounts for day-to-day operations but claims that, because the funds were idle and "available for day-to-day operations," the operational function test has been satisfied.  The Department relies on plaintiff's failure to segregate these funds into separate operational and investment accounts.  The United States Supreme Court has rejected the claim that passive income somehow is transformed into business income simply because the two types of income are commingled.  
F.W. Woolworth Co. v. Taxation & Revenue Department
, 458 U.S. 354, 364 n.11, 73 L. Ed. 2d 819, 827 n.11, 102 S. Ct. 3128, 3132 n.11 (1982) (investment income is not converted into apportionable business income by reason of being commingled with business income).

The Illinois Supreme Court has rejected 
an analogous commingling argument as a basis for finding all income or property taxable.  
Streeterville Corp. v. Department of Revenue
, 186 Ill. 2d 534, 538 (1999).  In that case, the Department sought to tax each space in a parking garage even though the garage allocated certain spaces to employees of a nonprofit hospital, thus subjecting these spaces to a property tax exemption.  The court rejected the Department's argument that a taxpayer must segregate its property between taxable and exempt use to claim a partial exemption and noted that the Department had no difficulty in agreeing upon a percentage of the parking garage that was exempt.  
Streeterville Corp.
, 186 Ill. 2d at 538-39.   

We also find no significance in plaintiff's failure to segregate its investment and operational funds into separate accounts.  The fact that plaintiff's available investment funds were not segregated from the funds used for working capital needs does not render all the income generated within the short-term accounts apportionable.
 
 Rather, in deciding whether funds in a short-term bank account serve an operational or investment function, the Supreme Court's decisions in 
ASARCO Inc. 
and 
Allied-Signal, Inc.
 confirm that the court must determine how the corporation uses the funds.  See also 1 J. Hellerstein & W. Hellerstein, State Taxation: Corporate Income and Franchise Taxes 9-91 (2d ed. 1993) ("[I]f the payor is not a component of the unitary business and the asset is not 
used
 in the conduct of the unitary business of which the recipient corporation is a part, the interest should be allocable to the State of the taxpayer's domicile ***.")  (Emphasis added.)  It is the use of the funds that establishes the minimal connection between the corporate's activities and the taxing state.  
Allied-Signal, Inc.
, 504 U.S. at 787, 119 L. Ed. 2d at 552, 112 S. Ct. at 2263. 

Therefore, we further conclude that the mere availability of investment funds for day-to-day operations of a nondomiciliary corporation in a short-term account does not provide a sufficient connection between the corporation's activities and the taxing state to allow the state to apportion the interest income generated from these funds.  If availability were the standard, all income from a taxpayer's short-term investment account would automatically serve an operational function simply because the funds were available for use.  We reject this standard because it permits a state to tax income that has no relationship to a taxpayer's activities in the taxing state.  

The authority that the Department relies upon does not support its argument.  In 
Alaska Department of Revenue v. OSG Bulk Ships, Inc.
,
 
961 P.2d 399 (Alaska 1998), the Alaska Supreme Court reversed a hearing officer's determination that investment income of the defendant, a nondomiciliary corporation, was apportionable.  The court found that the hearing officer improperly based his decision on the defendant's commingling of investment and operational income, and the hearing officer applied an incorrect legal standard.  The court ordered, on remand, that the hearing officer segregate the income at issue between investment and operational functions.  The court further instructed that the defendant's investment income could only be apportioned if either "(1) the investment itself constitutes part of the corporation's unitary business ***, or (2) the investment is short term and the income is 
used
 to fund the unitary business, such that the investment is analogous to a bank account for the unitary business."  (Emphasis added.)  
OSG Bulk Ships, Inc.
, 961 P.2d at 414.

In 
Port Affiliates, Inc. v. Wisconsin Department of Revenue
, 190 Wis. 2d 272, 526 N.W.2d 806 (1994), the taxpayer challenged Wisconsin's attempt to apportion income from its investment portfolio of marketable securities.  The taxpayer was incorporated in Wisconsin but had moved its principal offices from Wisconsin to Florida.  In rejecting the taxpayer's challenge, the court distinguished 
Allied-Signal, Inc.
 on the grounds that the taxpayer's corporation was incorporated and domiciled in Wisconsin.  
Port Affiliates, Inc.
, 190 Wis. 2d at 286, 526 N.W.2d at 812.  The court further rejected the taxpayer's arguments that the accounts at issue were not used for operating expenses.  The court cited a management agreement allowing for use of the funds for equipment purchases, actual use of the portfolio's funds for capital acquisitions, and an overall operational efficiency as a result of the portfolio.  
Port Affiliates, Inc.
,
 
190 Wis. 2d at 285-88, 562 N.E.2d at 812-13. 

Contrary to the Department's position, both 
OSG Bulk Ships, Inc. 
and 
Port Affiliates, Inc. 
 support the conclusion that funds in a short-term investment account only have an operational function if 
used
 in the corporation's operations.  The court in 
OSG Bulk Ships, Inc.
 remanded the case so that the hearing officer could determine if the funds in the short-term account were used in the unitary business.  Similarly, the court in 
Port Affiliates, Inc. 
pointed out several operational uses of the funds in the taxpayer's portfolio investment account.  Therefore, neither case supports the Department's claim that the mere availability of funds in a corporation's short-term investment account establishes an operational function for those funds and allows for an apportionment of any and all earned income.

Here, the type of funds at issue was excess cash that was not used or part of plaintiff's

working capital needs.  The Department has stipulated to this fact.  These funds served only an investment function.  Home Interiors' passive investment income is not apportionable to Illinois simply because Home Interiors used a small portion of its funds held for investment purposes for its working capital needs.  Therefore, the operational function test does not give the Department the authority to apportion all of the income from plaintiff's short-term investment accounts.  Because neither the unitary relationship nor the operational function test has been satisfied, we conclude there lacks a sufficient nexus between these accounts and the State of Illinois for the Department to apportion all the interest that these accounts generated in 1989 and 1990.  The apportionment of all this income violates the commerce and due process clauses of the United States Constitution. 

The Department, nevertheless, points out that plaintiff's formula to determine the percentage 

of income actually used for working capital needs and apportionable as business income is flawed. 

While it has always contended that no formula could actually segregate the type of funds within a 

general short-term account, it agreed to the exact amount of income it could apportion if plaintiff 

prevailed on its constitutional argument.  The parties stipulated: "Should the Taxpayer prevail in its 

position that only the portion of the interest income that is available for use as working capital is to 

be apportioned, the total amounts of income to be apportioned are as follows:

1989 1990

Total Apportionable $7,681,334.03 $11,017,682.22

Greatest % Invasion

into the Average Invest. 24.90% 14.98%

Income Amount used

in Business 
$1,912,652.17 $1,650,448.80
"

The Department is bound by this stipulation, and we believe it is appropriate to enforce it.  For the reasons previously discussed, we conclude that defendant may include only a portion of Home Interiors' interest income from its four investments within its apportionable tax base.  Under the due process and commerce clauses of the United States Constitution, Illinois has the authority to tax interest income in the short-term investments accounts that plaintiff used as working capital.  The plaintiff has prevailed regarding its position that only the portion of the interest income that is available for use as working capital is to be apportioned and therefore the parties will be bound by their previously noted stipulation as to the total amounts of income to be apportioned.

For the foregoing reasons, we reverse the decisions of the circuit court and the Department and remand for further proceedings consistent with this opinion.

Reversed and remanded.

TULLY and GALLAGHER, JJ., concur.