JAMES W. COLLINS, Plaintiff-Appellant, v. THE RETIREMENT BOARD OF THE POLICEMEN'S ANNUITY AND BENEFIT FUND—CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—01—2018

Opinion filed June 18, 2002.—Rehearing denied November 25, 2002.

Daniel J. Collins, of Williams, Collins & Bax, P.C., of Chicago, for appellant.

David R. Kugler, of Retirement Board of Policemen's Annuity and Benefit Fund, of Chicago, for appellees.

JUSTICE McBRIDE delivered the opinion of the court:

On June 9, 1998, plaintiff James W. Collins filed a complaint for administrative review and other relief with the circuit court of Cook County from a decision by the Retirement Board of the Policemen's Annuity and Benefit Fund—City of Chicago (Board) denying Collins certain benefits under the Illinois Pension Code (40 ILCS 5/5—101 *et seq.* (West 2000)). On remand, the Board affirmed its decision. The circuit court then heard the matter on appeal from the administrative review. On May 9, 2001, the court affirmed the decision of the Board by written opinion and order. Collins now appeals to this court.

The following facts are not in dispute. James W. Collins joined the Chicago police department on January 9, 1961. On February 5, 1985, while on duty, Collins was seriously injured when a car crossed the center line and struck the squad car Collins was driving. At the time of the accident, Collins was assigned to Area 2 as a youth officer. Following the accident, Collins attempted to return to active duty but was unable. On August 14, 1987, Collins was informed by the Board in writing that he was placed on "duty disability." In the August 14 letter, the Board informed Collins that he was to be awarded 75% of his salary at the time of his award. Additionally, the Board advised Collins that while he was carried as a disability beneficiary, his "service and monetary credits for annuity purposes go on just as though [he were] performing active duty." The status of "duty disability" removed Col-

lins from the City of Chicago payroll and made him subject to the compensation structure of the Illinois Pension Code. Collins remained on "duty disability" until his retirement on November 30, 1998.

At the time of his award, Collins was awarded 75% of the salary of an active-duty youth officer. Pursuant to the statute, an active police officer who becomes disabled is entitled to receive "duty disability" benefits "during any period of such disability for which he does not have a right to receive salary, equal to 75% of his salary, as salary is defined in this Article, at the time the disability is allowed." 40 ILCS 5/5—154 (West 2000). Beginning January 1, 1996, the statute was amended to provide that "no duty disability benefit that has been payable under this Section for at least 10 years shall be less than 50% of the current salary attached from time to time to the rank held by the policeman at the time of removal from the police department payroll." 40 ILCS 5/5—154 (West 2000). Therefore, starting in January 1998, Collins was awarded an amount equal to 50% of the current salary of an officer of similar rank, that amount being greater than 75% of Collins' salary at the time of his disability award.

The statute also provided Collins with a pension upon retirement based on life annuity credits while on "duty disability." Section 5—172 provides that "[i]n lieu of salary deductions for annuity purposes, the city shall contribute the required amounts for any period during which a policeman receives a duty disability benefit. The city shall also contribute all amounts ordinarily contributed by it for annuity purposes for the policeman as though he were in active discharge of his duties during such disability." 40 ILCS 5/5—172 (West 2000).

At issue in this dispute is the statutory definition of "salary." Under the statute, "salary" is the "annual salary of a policeman appropriated for members of his rank or grade in the city's annual budget or appropriation bill." 40 ILCS 5/5—114(d) (West 2000). Effective January 1, 1998, the Illinois legislature expanded the meaning of "salary": "Beginning January 1, 1998, the salary of a policeman, as calculated under subsection (d), shall include any duty availability allowance received by the policeman." 40 ILCS 5/5—114(f) (West 2000). We note the use of the word "shall." Under rules of statutory construction, we accept this as mandatory. *Curtis Investment Firm, Ltd. Partnership v. Schuch*, 321 Ill. App. 3d 197, 746 N.E.2d 1233 (2001). Section 5—114 also provides an option to officers to apply this provision retroactively:

> "An active or former policeman who (1) either retired between July 1, 1994 and December 31, 1997, both inclusive, or attained or will attain age 50 and 20 years of service between July 1, 1994 and January 1, 2002, both inclusive, and (2) received a duty availability

allowance at any time after June 30, 1994 and before January 1, 1998 may elect to have that duty availability allowance included in the calculation of his or her salary under subsection (d) for all or any portion of that period for which the allowance was received, by applying in writing and paying to the Fund, no earlier than January 1, 1998 and no later than July 1, 1998, the corresponding employee contribution without interest. Thereafter the City shall make its corresponding contribution, without interest." 40 ILCS 5/5—114(f) (West 2000).

Collins does not dispute that the Board correctly calculated and awarded him his "duty disability" benefit prior to the amendment to section 5—114.

On April 13, 1998, Collins sent a letter to the Board requesting that his award be recalculated to include "duty availability allowance" pursuant to the January 1, 1998, amendment to section 5—114. He advised the Board that he wished to exercise his option to have the provision apply retroactively and, as such, enclosed a check for his past contributions. On May 1, 1998, the Board responded to Collins' request in writing. The Board denied Collins' request, stating that since he did not *receive* a "duty availability allowance" from the time he began receiving "duty disability" benefits to the present, he did not now qualify for this additional benefit. The Board returned his check.

On June 9, 1998, Collins filed an action for administrative review. After the filing, the Board requested that the matter be remanded to the Board for a *de novo* review. Collins agreed. After a hearing on September 23, 1999, the Board issued its decision in writing on July 27, 2000. In its decision, the Board affirmed its earlier ruling on the matter. Collins then appealed to the circuit court. On May 9, 2001, in a written opinion and order, the circuit court affirmed the decision of the Board.

Collins argues that we must reverse the Board's decision and define the word "salary" uniformly to both active and disabled police officers. Collins also asks us to reject the Board's effort to read the word "received" in isolation and instead give effect to the provisions of the Illinois Pension Code as a whole. Specifically, Collins asks us to determine that the Board failed to correctly calculate his "duty disability" benefits from January 1, 1998, to November 30, 1998, by not considering his "salary" to include the "duty availability allowance" pursuant to the section 5—114 amendment.

■ Under the Administrative Review Law, we review the final decision of the administrative agency and not the decision of the circuit court. 735 ILCS 5/3—101 *et seq.* (West 2000). We will defer to the agency's findings of fact, yet we conduct an independent review of its

conclusions of law. *Home Interiors & Gifts, Inc. v. Department of Revenue*, 318 Ill. App. 3d 205, 209, 741 N.E.2d 998 (2000). When deciding a mixed question of law and fact, we review the agency's decision under a clearly erroneous standard. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205, 692 N.E.2d 295 (1998). When the issue on appeal involves no dispute of fact and is one of law only, we review the agency's decision *de novo*. *Home Interiors & Gifts, Inc.*, 318 Ill. App. 3d at 209. Here, the facts were uncontroverted and the Board was charged with interpreting the statute. Because these are issues of statutory interpretation, we will apply a *de novo* standard of review. *White v. City of Aurora*, 323 Ill. App. 3d 733, 753 N.E.2d 1244 (2001).

It is not in dispute that when Collins was placed on "duty disability" in 1987, he was effectively removed from the City of Chicago payroll. This subjected him to the compensation structure of the Illinois Pension Code. 40 ILCS 5/5—101 *et seq.* (West 2000). It is also undisputed that but for the January 1, 1998, amendment to section 5—114, Collins would not be entitled to a "duty availability allowance" as part of his salary calculation for any time after he began receiving "duty disability" benefits. Thus, the controversy here is one of statutory construction and whether or not, under the statute's amendment, Collins is afforded the benefit of "duty availability allowance" as part of his "salary."

■ Collins correctly points out in his brief that the primary purpose of statutory construction is to give effect to the language and intent of the legislature. *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 149, 688 N.E.2d 90 (1997). *Advincula v. United Blood Services*, 176 Ill. 2d 1, 16, 678 N.E.2d 1009 (1996). *People v. Acevedo*, 275 Ill. App. 3d 420, 425, 656 N.E.2d 118 (1995). The statute must be read and considered as a whole such that each section of the statute is examined in relation to other sections and all words should be given their plain and ordinary meaning. *Advincula*, 176 Ill. 2d at 16-17. We must presume that the legislature did not intend for any absurd or unjust meaning. *Acevedo*, 275 Ill. App. 3d at 426. Additionally, the "responsibility for the wisdom or justice of legislation rests with the legislature, and courts may not rewrite statutes to make them consistent with the court's idea of orderliness and public policy." *People v. Wright*, 194 Ill. 2d 1, 29, 740 N.E.2d 755 (2000). Also, where a statute defines its own terms, we consider those terms in accordance with the statutory definition provided. *A.R. v. Chicago Board of Education*, 311 Ill. App. 3d 29, 33, 724 N.E.2d 6 (1999). *Holland v. City of Chicago*, 289 Ill. App. 3d 682, 686, 682 N.E.2d 323 (1997).

■ We also note the well-settled principle that the purpose of laws

regarding pension is beneficial, and statutes of this nature should be liberally construed in favor of those to be benefitted. The *Holland* court specifically noted that Article 5 of the Illinois Pension Code should be interpreted in favor of police officers. *Holland*, 289 Ill. App. 3d at 689-90. *Board of Trustees of the Policemen's Pension Fund v. Department of Insurance*, 42 Ill. App. 3d 155, 159, 356 N.E.2d 171 (1976).

■ Section 5—154 of the Illinois Pension Code allows for a "duty disability" benefit to an active police officer who becomes disabled in the performance of an act of duty. The section states that this benefit is available during any period of such disability for which the officer does not have a right to draw a salary "as salary is defined in [the] Article." 40 ILCS 5/5—154(a) (West 2000). Section 5—114(f) states that the "salary" of a police officer shall include any "duty availability allowance" received by the police officer. 40 ILCS 5/5—114(f) (West 2000). Also relevant is section 5—172, which requires the city to contribute toward an officer's annuity while the officer is on "duty disability": "[t]he city shall also contribute all amounts ordinarily contributed by it for annuity purposes for the policeman as though he were in active discharge of his duties during such disability." 40 ILCS 5/5—172 (West 2000).

■ We interpret the "duty availability allowance" to mean that the officer is entitled to an allowance in the event he is available for duty. The parties draw our attention to an agreement between the Fraternal Order of Police, Chicago Lodge 7, and the City of Chicago (FOP agreement). Section 20.13 of this agreement addresses "duty availability." Specifically, the agreement allows for Chicago police officers to receive a certain sum of money per quarter. Section 20.13(B) states: "In accordance with the Letter of Understanding, the Employer shall treat duty availability allowance payments as pensionable retroactive to July, 1994." Section 20.13(C) states: "Entitlement to duty availability pay is not dependent on an officer being present for duty for an entire pay period."

In its brief, the Board argues, in examining the language of amended section 5—114(f), that the "duty availability allowance" benefit is only available to a police officer who has actually received the benefit and not an officer who could have received the benefit. It goes on to note that the language of section 5—114(f) is clear and unambiguous in this respect. Therefore, because Collins was on "duty disability" when the amended section was enacted, he never actually received the "duty availability allowance" and, thus, is not now entitled to it.

Collins argues that this logic is flawed. First, Collins points out

that section 5—172 of the Code prevents disparate treatment between active and disabled officers. As noted above, section 5—172 states that a disabled officer should be treated under the Code for purposes of benefits "as though he were in active discharge of his duties." 40 ILCS 5/5—172 (West 2000). Collins further argues that under the Board's reasoning, there would be disparate treatment among disabled officers. Collins presents this court with the following example. If an active police officer were to become disabled today, he would already have "received" the "duty availability allowance" as part of his "salary." Thus, this officer would be entitled to receive a percentage of this allowance as part of his "duty disability" benefit but Collins cannot. Collins argues that the Code was not drafted to draw these distinctions. Collins contends that the "duty disability" benefits he is entitled to are based on the current salary of an officer of similar rank and not what he (Collins) has personally received.

In examining the FOP agreement, the Board argues that not every officer is going to receive the "duty availability allowance" and, therefore, Collins cannot argue that he is entitled to it under his "salary." The Board draws our attention to subsection C of section 20.13 of the agreement, which states that "entitlement to duty availability pay is not dependent on an officer being present for duty for any entire pay period." The Board reasons that subsection C means that in order to receive the "duty availability allowance," an officer need not be available for an "entire" pay period, but must be available for duty for at least a portion of the pay period. Because not all officers will qualify for this benefit, the Board reasons, Collins cannot qualify for this benefit.

In his reply brief, Collins responds to this argument by suggesting that subsection C was created to alleviate the problem of active police officers who were suspended for a few days within the quarter and being denied the "duty availability allowance." Collins states that instead of treating him as an officer injured in the line of duty and subject to the rights of active officers while on disability, as required by the statute, the Board is attempting to treat him as though he were suspended for disciplinary reasons.

Studying the legislative history of the section 5—114(f) amendment does not shed additional light on this matter. On April 8, 1997, the bill that became the amendment was introduced in its third reading by the sponsor of the bill, Representative Capparelli, who stated: "This allowance, which currently totals about $400 per quarter does not count as part of their retirement. House Bill 345 would change the definition, from duty availability to salary so it would count towards their retirement." 90th Ill. Gen. Assem., House Proceedings, April 8,

1997, at 112 (statements of Representative Capparelli). The legislature made no distinction between active and disabled officers in consideration of this legislation.

We consider that pension benefits should be viewed in favor of the beneficiaries—in this case, the police officers. *Holland*, 289 Ill. App. 3d at 689-90. Moreover, we recognize that when interpreting a statute, we are to view it as a whole. Particular provisions of the statute must not be read in isolation, but must be read in conjunction with all other relevant provisions of the statute. *Holland*, 289 Ill. App. 3d at 685-87.

■ Taking into account all the relevant sections of the Illinois Pension Code, we find no evidence that the legislature intended to exclude those officers under "duty disability" benefits from the amended definition of "salary" and, thus, from the benefit of "duty availability" for purposes of calculating pension benefits. As noted above, section 5—114 provides for the meaning of "salary" under the Pension Code: "Beginning January 1, 1998, the salary of a policeman, as calculated under subsection (d), *shall* include any duty availability allowance received by the policeman." (Emphasis added.) 40 ILCS 5/5—114(f) (West 2000). We note the use of the word "shall." Under rules of statutory construction, we accept this as mandatory. *Curtis Investment Firm, Ltd. Partnership v. Schuch*, 321 Ill. App. 3d 197, 199, 746 N.E.2d 1233 (2001).

Additionally, we are not persuaded by the Board's argument that an officer must have "received" the benefit prior to "duty disability" in order to qualify. We believe the legislature intended that those officers, disabled in the line of duty, be afforded the same benefits as those officers who continue to actively serve. We find this has been made clear by the language found in sections 5—154, 5—114 and 5—172 of the Code. 40 ILCS 5/5—154, 5—114, 5—172 (West 2000).

Accordingly, we reverse the decision of the Board and remand the matter for a recalculation of Collins' monthly duty disability allowance "salary" to include the duty availability allowance currently paid to youth officers; for a recalculation of Collins' life annuity account credits to include the recalculation of his "salary"; and for the acceptance of a voluntary pension contribution from Collins in accordance with the retroactivity provision in section 5—114(f).

Reversed and remanded.

BURKE, P.J., and GORDON, J., concur.